

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Overruled by ...........
Rudco Oil & Gas Co v Semaster
146 S W 2nd 806

Honorable B. A. Steinhagen, Secretary
Board of Directors, Lower Neches Valley Authority
c/o Comet Rice Mills
Beaumont, Texas

Dear Sir:

Opinion No. 0-3275
Re: Effective date of House
Bill No. 1084.

We are pleased to comply with your request for our opinion on the above stated question.

House Bill No. 1084 being an Act to amend the statutes relating to the Lower Neches Valley Authority was enacted by the 47th Legislature under the following circumstances: June 16, 1941, passed by the House -115 ayes; 0 nays; June 18, passed by the Senate -28 ayes; 0 nays; July 2, vetoed by the Governor; July 3, passed by the House over veto -91 ayes; 19 nays; July 3, passed by the Senate over veto -27 ayes; 2 nays.

This Bill as originally enacted and as passed over the Governor's veto contains the following emergency clause:

"The importance of this legislation to the section of the State affected thereby creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days shall be, and the same is hereby, suspended, and this Act shall take effect and be in force from and after the passage thereof, and it is so enacted." (Emphasis ours.)

We quote the two provisions of the Constitution of Texas which are applicable to this question:

Article 3, Section 39. "No law passed by the Legislature, except the general appropriation act, shall take effect or go into force

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable B. A. Steinhagen, Page 2

until ninety days after the adjournment of the
session at which it was enacted, unless in case
of an emergency, which emergency must be express-
ed in a preamble or in the body of the act, the
Legislature shall, by a vote of two-thirds of
all the members elected to each House. otherwise
direct; said vote to be taken by yeas and nays,
and entered upon the journals."

Article 4, Section 14. "Every bill which
shall have passed both houses of the Legislature
shall be presented to the Governor for his ap-
proval. If he approve he shall sign it; but if
he disapprove it, he shall return it, with his
objections, to the House in which it originated,
which House shall enter the objections at large
upon its journal, and proceed to reconsider it.
If after such reconsideration, two-thirds of the
members present agree to pass the bill, it shall
be sent, with the objections, to the other House,
by which likewise it shall be reconsidered; and,
if approved by two-thirds of the members of that
House, it shall become a law; but in such cases
the votes of both Houses shall be determined
by yeas and nays, and the names of the members
voting for and against the bill shall be entered
on the journal of each House respectively. * * *"

It is to be noted that in order to make effective the
emergency clause providing that the Act shall take effect imme-
diately it must be supported by a "vote of two-thirds of all the
members elected to each House"; i.e., 100 members of the House
and 21 members of the Senate; whereas, in order to override the
Governor's veto it is only necessary that the Bill receive the
votes of "two-thirds of the members present of the House in
which the bill originated." It is to be noted that the Bill
under consideration when passed over the Governor's veto receiv-
ed sufficient votes in the House to override the Governor's veto,
but not sufficient votes to make the emergency clause effective.
The question therefore resolves itself as to whether we may look
to the vote upon the original passage of this Bill on June 16,
to determine whether the emergency clause is effective or wheth-
er its effect depends upon the votes on July 3, on the day it
was passed over the Governor's veto.

A Bill containing an emergency clause providing that
it shall take effect immediately upon passage does become imme-
diately effective if passed by a two-thirds majority of each

Honorable B. A. Steinhagen, Page 3

House of the Legislature. Worbes v. State, (Tex. Ct. Cr. App., 1934), 71 S. W. (2d) 872. The courts may not look behind the facts or reasons stated by the Legislature in its emergency clause providing for immediate effect of a bill. Little v. State, 129 S. W. (2d) 307.

Unless both Houses of the Legislature passed the Bill with the requisite two-thirds majority it does not become effective until ninety days after the adjournment of the Legislature. M. K. & T. Railway Co. of Texas v. McGlamory, 92 Tex. 150.

In Wilson v. Young County Hardware & Furniture Company by the Ft. Worth Court of Civil Appeals, 262 S. W. 873, it was held that the vote upon the final passage of the Bill and not upon adoption of amendments controls the question. Buck, J., speaking for the Fort Worth Court of Civil Appeals in that case, said:

"Under notes in Ann. Cas. vol. 16, p. 977, the majority rule is said to be that the final passage of a bill within the meaning of a constitutional provision requiring a vote on final passage to be by ayes and nays is the vote taken upon the last reading of the bill upon the question whether it shall become a law, and does not include a vote subsequently taken by one branch of the Legislature upon concurring in the amendments made by the other branch. * * *. We are of the opinion that the majority rule should be followed, and that we must hold that the vote on the bill as finally passed by the Senate was the vote on final passage and the law was in effect immediately upon the concurrence by the House with the Senate amendment. * * *."

In Ex parte May, 40 S. W. (2d) 811, the Court of Criminal Appeals in Texas refused to follow the Wilson case, supra, and declared:

"* * *. The words 'final passage', as used in our constitution, mean final passage. They do not mean some passage before the final one, but the last one. They do not mean the passage of a part of a bill, or what is first introduced, and which may, by reason of amendment, become the least important. * * *.

Honorable B. A. Steinhagen, Page 4

"* * *. It seems enough to say that a reason-
able and logical interpretation of the controll-
ing provision of the Constitution of this state
confers upon the Legislature both the power, by
a record vote with majority of two-thirds of the
members of each house, to change the time within
an act of the Legislature may ordinarily become
effective, and requires that they exercise such
authority and power at the time when they become
aware of the terms of the law as finally agreed
upon.  Previous action upon a bill in its initial
stages, before material and radical changes have
been made, would not control."

In Caples v. Cole, 102 S. W. (2d) 173, the Supreme
Court of Texas overruled the Wilson case, supra, and held in ac-
cordance with the May case, by the Court of Criminal Appeals, to
the effect that the last and final vote of both Houses on a Bill
in its final form determines whether the emergency clause provid-
ing that it go into effect immediately be operative.  We quote
from the opinion of Mr. Justice Sharp, in the Caples v. Cole case:

"Furthermore, we agree with the holding of
the Court of Criminal Appeals in the May Case,
and hold that this bill became effective imme-
diately after its passage.  It is clear that
the object of the provision of the Constitution
above quoted is that if a bill is to take effect
immediately on its passage, it must contain an
emergency clause and such bill must be passed
by a vote of two-thirds of all the members e-
lected to each house, and such vote to be taken
by yeas and nays and entered upon the journals.
We think the rule prescribed by the Constitution
also applies to amendments and reports of con-
ference committees.  If this were not true, it
is quite obvious how the rule could be abused.
* * *"

It is interesting to note that in spite of the conflict
between the Wilson case, above cited, and the subsequent two cases
on the question of whether the votes before or after the adoption
of amendments control, all three cases are authority for the pro-
position that the last and final passage of the Bill determines
the vote as to whether the emergency clause becomes effective.
It is therefore our opinion, that in view of the fact that House

Honorable B. A. Steinhagen, Page 5

Bill No. 1084 received the requisite two-thirds majority of all the members elected to both Houses upon its final passage prior to submission to the Governor, the emergency clause to the Bill was thereby enacted by the requisite two-thirds majority of both Houses.  The subsequent vote on the Bill was not for the purpose of enacting the emergency clause but solely for the purpose of overriding the Governor's veto.  As provided by Article 4, Section 14 of the Texas Constitution, the affirmative vote of two-thirds of the members present was sufficient for this purpose. Article 3, Section 39, and Article 4, Section 14, are two separate and distinct constitutional provisions, each created for a different purpose, and we believe that the two should not be construed to be interdependent.  This is the rule declared by Lewis' Sutherland on Statutory Construction, Vol. 1, p. 111, where it is stated:

> "It is held that an act with an emergency clause passed over the Governor's veto takes effect immediately."

The case cited for this statement is Commissioners Sinking Fund v. George, by the Kentucky Court of Appeals, 47 S. W. 779, wherein the court, faced with the identical question here presented, and construing constitutional provisions of Kentucky analogous to those of the Texas Constitution here under consideration, declared:

> "* * *.  It is contended that although there is an emergency clause in the bill, and it was passed by the two houses as the constitution requires, it cannot become a law for 90 days, unless the governor approves it.  If the constitutional convention had intended that the will of the governor was to control on the matter of declaring an emergency, it would simply have said that the governor may declare an emergency, and put the act in force at once.  We do not think the language and the spirit of the constitution make the approval of the governor a condition precedent to the taking effect of an act.  The legislature can pass a bill, and it can, by the plain provisions of the constitution, become a law without the governor's approval. There may be a great necessity that the act should immediately become a law.  And, as the legislature can pass a bill against the objections of the governor, it seems to us that it was never intended

that the governor should have the power, by with-
holding his approval, to prevent the act from
taking effect for 90 days after the adjournment
of the general assembly which passed the act.
The governor can delay the time, when the bill
shall become a law, 10 days, by holding the bill
without signing or returning it. It seems to us
that, when an act becomes a law without his ap-
proval, it would be a strange construction of the
constitution to allow the time to be postponed
when it would take effect because the governor
did not approve it. The governor vetoed the bill.
It contained the emergency clause. The general
assembly had the same power to pass the bill with
an emergency clause as it had to pass it without
such clause. And the clause was effective to put
in operation the act. We think the language used,
to wit, 'when approved by the governor,' refers
to the time when the act would take effect if ap-
proved by him. However, when he disapproves it,
then it does not take effect, unless passed, as
the constitution requires, over his objection.
This being done, it became a law immediately,
if the legislature had declared an emergency.
By considering sections 55 and 88 together, we
think the conclusion we have reached is correct."

It is therefore our opinion that House Bill No. 1084
of the 47th Legislature became effective on July 3, 1941, the
date of its passage, over the Governor's veto.

Yours very truly

APPROVED JUL 25, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By Walter R. Koch
            Walter R. Koch
                Assistant

WRK:RS



APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN